IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Kassandra Rosado and Kreisau Group LLC,　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiffs,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)　　　No. 26 C 1532
　　　　v.　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)　　　Judge Jorge L. Alonso
Pamela Bondi, *et al.*,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendants.　　　　　　　　　　)

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kassandra Rosado runs a Facebook group called "ICE Sightings – Chicagoland" and Plaintiff Kreisau Group runs a phone application called "Eyes Up." Both allow users to post videos and information regarding ICE activity. Plaintiffs allege that Defendants coerced Facebook into disabling the Chicagoland Facebook group and coerced Apple into removing Eyes Up. Plaintiffs contend that this violated their First Amendment rights and they now move for a preliminary injunction to enjoin Defendants from continued coercion. For the reasons stated below, Plaintiff's motion for a preliminary injunction is granted.

**Background**

Plaintiff Kassandra Rosado created "ICE Sightings – Chicagoland" in January 2025 as a Facebook group for people to post videos and information regarding ICE activity. R. 1 ¶¶ 26. On October 12, 2025, social media influencer Laura Loomer posted a link to the Facebook group and tagged Pamela Bondi and Kristi Noem.[1] R. 10-4 at 36. On October 14, Bondi posted: "Today

---

[1] Pamela Bondi was named as a defendant in her official capacity as Attorney General and Kristi Noem was named as a defendant in her official capacity as the Secretary of Homeland Security. Since the filing of this lawsuit, Bondi and Noem have both been replaced. Todd Blanche is now the acting Attorney General and Markwayne Mullin is now the Secretary of Homeland Security. Pursuant to Federal Rule of Civil Procedure 25(d), Blanche and Mullin are automatically substituted as the Defendants.

following outreach from [the DOJ], Facebook removed a large group that was being used to dox and target [ICE] agents in Chicago." *Id.* at 63. Also on October 14, Defendant Noem posted: "Today, thanks to [the DOJ], Facebook removed a large page being used to dox and threaten our ICE agents in Chicago." *Id.* at 65. Around October 14, Facebook disabled the group and notified Rosado that the group "went against the Community Standards multiple times." R. 1 ¶¶ 66, 69. When asked by the media if DOJ had requested removal of the group, a Facebook spokesperson declined to comment and pointed to Bondi's social media post. *Id.* ¶ 72.

Prior to October 14, out of thousands of posts and tens of thousands of comments made in the Chicagoland Facebook group, Facebook's moderators found and removed only five posts and comments that purportedly violated Facebook's guidelines. *Id.* ¶ 32. When Facebook removed those posts, Facebook advised Rosado that the posts were "participant violations" that "don't hurt your group" and that "groups aren't penalized when members or visitors break the rules without admin approval." *Id.* ¶ 33. Additionally, Facebook's policies do not call for disabling groups if just a few members post prohibited conduct. *Id.* ¶ 70. Rather, Facebook's policies call for disabling groups when the group moderator either creates prohibited content or affirmatively approves such content. *Id.*

Plaintiff Kreisau Group created "Eyes Up" in August 2025 as a phone application for people to post videos and information regarding ICE activity. *Id.* ¶¶ 39–41. Around October 2, 2025, Apple removed several apps that shared information regarding ICE activity, including ICEBlock, Red Dot, and Eyes Up. *Id.* ¶ 51. Speaking to Fox News on October 2, Defendant Bondi stated: "We reached out to Apple today demanding they remove the ICEBlock app from their App Store – and Apple did so." *Id.* ¶ 53. And on October 8 Bondi made a public statement that "we had Apple and Google take down the ICEBlock apps." *Id.* ¶ 54.

2

Apple informed Kreisau Group that Apple had removed Eyes Up from the App Store after receiving "information" from "law enforcement" that the app violated Apple's guidelines. *Id.* ¶ 56. Apple stated that the app violated guideline 1.1.1, which prohibits "defamatory, discriminatory, or mean-spirited content." *Id*. But Apple had previously and independently reviewed Eyes Up in August 2025. *Id.* ¶ 58. During that previous review, Eyes Up was already available on its website, and Apple had knowledge of the purpose of Eyes Up, of actual videos available on it, and how it worked. *Id*. Apple had flagged some unrelated issues, which Kreisau Group resolved before Apple approved the app. *Id.* And at that time, Apple raised no concern that Eyes Up contained "defamatory, discriminatory, or mean-spirited content" in violation of guideline 1.1.1. *Id.*

In February 2026, Plaintiffs filed this lawsuit alleging that Defendants violated Plaintiffs' First Amendment rights by coercing Facebook and Apple into suppressing their protected speech. *Id.* ¶ 75. Plaintiffs now move for a preliminary injunction to enjoin Defendants from continued coercion. R. 10.

## Discussion

### I.  Standing

"To establish standing under Article III of the Constitution, a plaintiff must demonstrate (1) that he or she suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief." *Thole v. U. S. Bank N.A.*, 590 U.S. 538, 540 (2020). "In determining whether plaintiffs have standing, [courts] accept[] as true all well-pleaded allegations in the complaint" and may "also consider information beyond the complaint." *Russ v. Watts*, 190 F. Supp. 2d 1094, 1097 (N.D. Ill. 2002). As described below, Plaintiffs have standing to bring this lawsuit because they can show the three required elements.

3

Regarding the first element, Plaintiffs allege the suppression of their First Amendment rights to publish the Chicagoland Facebook group and Eyes Up. There is no dispute that Plaintiffs allege a First Amendment violation. *See Irizarry v. Yehia*, 38 F.4th 1282, 1294 (10th Cir. 2022) (citing, among other cases, *ACLU of Illinois v. Alvarez*, 679 F.3d 583, 590 (7th Cir. 2012)) (finding that the "First Amendment right to record the police performing their duties in public is "beyond debate" and that "the First, Third, Fifth, Seventh, Ninth, and Eleventh Circuits have all concluded in published opinions that the First Amendment protects a right to film the police performing their duties in public."); *Moody v. NetChoice, LLC*, 603 U.S. 707, 729–30 (2024) ("A private party's collection of third-party content into a single speech product . . . is itself expressive [and thus protected] under the First Amendment."). And there is no dispute that the loss of First Amendment speech rights is a cognizable injury sufficient to confer standing. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (citing *Pleasant Grove City v. Summum*, 555 U.S. 460 (2009)).

Regarding the second element, "a federal court cannot redress injury that results from the independent action of some third party not before the court." *Murthy v. Missouri*, 603 U.S. 43, 57 (2024). In other words, Plaintiffs must show that the injuries are "likely traceable to government-coerced enforcement of Facebook's [and Apple's] policies rather than to Facebook's [and Apple's] independent judgment." *Id.* at 68 (citations omitted). The Court finds that Plaintiffs have shown that their injuries are likely traceable to government-coerced enforcement for the following reasons. First, Facebook had previously reviewed the Chicagoland group, and Apple had previously reviewed Eyes Up. In both cases, Facebook and Apple had determined that the content met their requirements. Second, Facebook and Apple changed their positions and removed the content immediately after Defendants contacted them about it. And third, Defendants made public statements taking credit for the fact that Facebook and Apple had removed the content.

4

Regarding the third element, and as alleged, Defendants' actions can be reasonably understood to convey a threat of adverse government action against Facebook and Apple in order to suppress Plaintiffs' speech.[2] Plaintiffs' speech remains suppressed—the Chicagoland Facebook group is still disabled and Eyes Up is still unavailable on the App Store. As such, Defendants' purported coercion is having "continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974). The requested injunction to stop Defendant's coercion thus redresses Plaintiff's injuries because it will allow Facebook and Apple to reach their own decisions regarding Plaintiff's speech rather than be pressured by Defendants. *See Backpage.com, LLC v. Dart*, 807 F.3d 229, 238 (7th Cir. 2015) (where defendant pressured Visa and MasterCard to prohibit credit card use for the purchase of ads on plaintiff's website, plaintiff's "only remedy [was] an injunction against the [defendant's continued] violating [of] its First Amendment rights").

## II.    Preliminary Injunction

To obtain a preliminary injunction, a plaintiff must establish that: (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The final two factors "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). As discussed above, Plaintiffs have alleged a violation of the First Amendment. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (citations omitted). And "injunctions protecting First Amendment freedoms are always in the public interest." *Alvarez*, 679 F.3d at 590. As such, the only element in dispute is whether Plaintiffs are likely to succeed on the merits.

---

[2] *See infra* Section II.

A plaintiff's likelihood of success on the merits "depends on [his] prospects of successfully meeting the elements of [his] claim." *Minocqua Brewing Co. LLC v. Hess*, 160 F.4th 849, 855 (7th Cir. 2025). The Supreme Court has established that "[g]overnment officials cannot attempt to coerce private parties in order to punish or suppress views that the government disfavors." *National Rifle Association of America v. Vullo*, 602 U.S. 175, 180 (2024). "To state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff 's speech." *Id.* at 191. Critically, when considering the government's threats:

> [T]he fact that a public-official defendant lacks direct regulatory or decisionmaking authority over a plaintiff, or a third party that is publishing or otherwise disseminating the plaintiff's message, is not necessarily dispositive. . . . What matters is the distinction between attempts to convince and attempts to coerce. A public-official defendant who threatens to employ coercive state power to stifle protected speech violates a plaintiff's First Amendment rights, regardless of whether the threatened punishment comes in the form of the use (or, misuse) of the defendant's direct regulatory or decisionmaking authority over the plaintiff, or in some less-direct form.

*Backpage.com*, 807 F.3d at 230–31 (citations omitted). As the Seventh Circuit found in *Backpage*, although the defendant lacked "authority to take any official action" and did not "directly threaten the [third parties] with an investigation or prosecution," the defendant still engaged in coercion where he "demand[ed]" rather than "request[ed]," and where he "intimat[ed]" that the third parties "may be criminal accomplices" if they failed to comply. *Id.* at 232, 236.

Here, Bondi and Noem did exactly that. They reached out to Facebook and Apple and demanded, rather than requested, that Facebook and Apple censor Plaintiff's speech. *See* R. 10-4 at 29 (emphasis added) ("'We reached out to Apple today *demanding* they remove the ICEBlock

app from their App Store – and Apple did so,' Bondi said in a statement to Fox News Digital."); R. 10-4 at 36 (emphasis added) (Loomer posting on social media that "DOJ source tells me . . . they have contacted Facebook . . . to tell them they *need* to remove these ICE tracking pages."); R. 10-4 at 65 (Noem posting on social media that "[p]latforms like Facebook *must* be PROACTIVE [sic] in stopping the doxxing of our [ICE] law enforcement.").

Bondi and Noem also intimated that Facebook and Apple may be subject to prosecution for failing to comply with Bondi and Noem's demands. For example, after stating that we "had Apple and Google take down the ICEBlock apps," Bondi further stated: "We're not going to stop at just arresting the violent criminals we can see in the streets." R. 10-1 at 9–10. And in the same social media post where Noem wrote that "[p]latforms like Facebook must be PROACTIVE in stopping the doxxing of our [ICE] law enforcement," she added: "We will prosecute those who dox our agents to the fullest extent of the law." R. 10-4 at 65. Although these statements may not be direct threats to prosecute Facebook and Apple, they are intimations of a threat. And thinly veiled threats such as these constitute sufficient evidence on which Plaintiffs are likely to succeed on their claim. *See Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 68 (1963) ("People do not lightly disregard public officers' thinly veiled threats to institute criminal proceedings against them if they do not come around.").

For these reasons, the Court finds that Plaintiffs are likely to succeed on the merits of their claim that Defendants violated their First Amendment rights through coercion of Facebook and Apple. As such, Plaintiffs have shown the required elements necessary to secure a preliminary injunction.

**Conclusion**

For the reasons stated above, Plaintiffs' motion [10] for preliminary injunction is granted. The Court will separately enter a preliminary injunction order. By 4/22/26, Plaintiffs' counsel shall provide a Word version of a draft preliminary injunction order to the undersigned judge's proposed order inbox after discussing the form of the order with Defendants' counsel.[3] In addition, the parties shall file a joint status report by 4/22/26 setting forth proposed next steps for this case.

**SO ORDERED.**                                    **ENTERED: April 17, 2026**

**HON. JORGE L. ALONSO**
**United States District Judge**

---

[3] The Court waives the bond requirement set forth in Federal Rule of Civil Procedure 65(c). *See Backpage.com*, 807 F.3d at 239 (waiving bond when granting preliminary injunction on First Amendment grounds).