# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

KASSANDRA ROSADO and KREISAU GROUP
LLC,

        *Plaintiffs*,

    v.

TODD BLANCHE, in his official capacity as Acting
Attorney General, and

MARKWAYNE MULLIN, in his official capacity
as Secretary of Homeland Security,

        *Defendants*.

Civil Action No.: 1:26-cv-01532

Hon. Jorge L. Alonso

## JOINT STATUS REPORT

Pursuant to this Court's minute orders of April 23 and May 1, 2026 (Dkt. Nos. 36, 38), the parties submit the following status report. Counsel for the parties conferred by videoconference on April 30, 2026, and exchanged emails thereafter. The parties were unable to reach agreement on the form of the preliminary injunction order, scheduling for future proceedings, or a joint report to the Court. Accordingly, the parties submit the following statements of their respective positions.

### Plaintiffs' Statement

This Court granted Plaintiffs' Motion for Preliminary Injunction on April 17, 2026, finding that Plaintiffs "are likely to succeed on the merits of their claim that Defendants violated their First Amendment rights through coercion of Facebook and Apple." Dkt. No. 34, at 7. Its Memorandum Opinion and Order concluded the record in this case reflects that senior DOJ and DHS officials contacted Facebook and Apple and "demanded, rather than requested" the platforms "censor

Plaintiff[s'] speech" while "intimat[ing] that Facebook and Apple may be subject to prosecution for failing to comply" with the government's demands. *Id.* at 6–7.

In response, the government has refused to accept the consequences of the Court's ruling, objecting to any proposed order unless it contains loopholes (on the substantive prohibitions, on notice, and on accountability) that would allow the government to continue its unconstitutional suppression of Plaintiffs' speech. Further, the government has repeatedly refused to hold a Rule 26(f) conference, discuss or agree to scheduling, or otherwise move the case forward, seeking to leverage its loss on a preliminary injunction motion as somehow justifying a *de facto* stay of all district court proceedings.

***Proposed Preliminary Injunction Order.*** Plaintiffs have had little time to consider and address Defendants' arguments set forth in their statement below,[1] but even brief review makes clear the government's aim is to try to create ambiguities and avoid the consequences of the Court's preliminary injunction ruling. Finalizing and entering a preliminary injunction order following the Court's order granting the injunction should be – and ordinarily is – a prompt process. It is not the time or the place for the losing party (here, the government) to try to reargue what they lost.

In any event, Plaintiffs briefly respond to the government's arguments and its alternative proposed order. Consistent with Supreme Court precedent, this Court's opinion, and the preliminary injunction issued in *Backpage.com*,[2] Plaintiffs' proposed order is a straightforward

---

[1] The Court's April 23 minute order directed that, if the parties could not agree on a proposed order, they were to attach their respective drafts to the joint status report, and the Court would determine whether to call for further briefing. Dkt. 36. Plaintiffs' counsel urged that the partes should follow the Court's order, but Defendants' counsel insisted the government would provide a separate statement of arguments, which they supplied to Plaintiffs mid-morning today.

[2] *See Backpage.com, LLC v. Dart*, 807 F.3d 229, 239 (7th Cir. 2015); *see also Backpage.com, LLC v. Dart*, 1:15-cv-06340, Dkt. No. 109 (N.D. Ill. Dec. 23, 2015).

and tailored prohibition on unconstitutional coercion of Meta and Apple to suppress Plaintiffs' Facebook group and app. The government's alternative is deficient in numerous respects.

First, on the substantive prohibition, the government's proposal strips away the prohibitions on actions to "coerce," "induce," or "pressure" Apple or Meta to suppress Plaintiffs' speech. Each of these terms comes directly from the Supreme Court's *Vullo* decision. *See NRA v. Vullo*, 602 U.S. 175, 180 (2024) (government "cannot attempt to coerce"); *id.* at 193 (no difference between "a threat" and "an inducement" for First Amendment purposes); *id.* at 180 (allegations that government "pressured" third parties stated First Amendment claim); *id.* at 201 (Jackson, J., concurring) (describing *Bantam Books* as prohibiting "exerting pressure on a third party" to censor speech). The government's proposal is limited to only one of these means: actions that "threaten" Meta or Apple with "punishment." Not only is this limitation solely to actions that "threaten" unduly narrow, *id.* at 180, 193, but even as to threats, unconstitutional threats may be implicit and need not identify any particular form of punishment. *See, e.g.*, *Okwedy v. Molinari*, 333 F.3d 339, 344 (2d Cir. 2003) (concluding communication conveying "implicit threat of retaliation" was sufficient, even without identifying form of potential retaliation).

Second, the government's proposed order allows it to continue coercing Meta and Apple when "authorized by" statute or regulation. The government identifies no statute or regulation authorizing it to continue violating First Amendment rights in this manner. And even if it did, it is fundamental constitutional law that the First Amendment trumps any contrary statute or regulation. U.S. Const. amend. I ("Congress shall make no law … abridging the freedom of speech …."); *see also, e.g.*, *United States v. Robel*, 389 U.S. 258, 268 n.20 (1967).

Third, the government's proposal creates a blanket exception for "publicly criticizing" Apple's or Meta's speech. But public criticism can be a component of unconstitutional coercion

3

to suppress speech. *See, e.g.*, *Vullo*, 602 U.S. at 193–94 (holding that government press release and social media post "reinforce[d]" First Amendment claim, rejecting the Second Circuit's view that these were "permissible government speech"). Indeed, many of Defendants' statements in this case could be framed as "criticism" of Meta and Apple. Plaintiffs' proposed order contains no prohibition on governmental actions to merely "persuade"—it is focused on actions that coerce, pressure, threaten, or induce when it comes to these particular companies and Plaintiffs' particular platforms. And even if the government were correct that this specific prohibition could somehow be described as broad, an "injunction must… be broad enough to be effective." *Russian Media Group, LLC v. Cable America, Inc.*, 598 F.3d 302, 307 (7th Cir. 2010) (holding that courts "may even enjoin certain otherwise lawful conduct when the defendant's conduct has demonstrated that prohibiting only lawful conduct would not effectively protect the plaintiff's rights").

Fourth, the government's proposed order requires no meaningful notice to personnel of DOJ or DHS. Rule 65 binds employees of defendants, but only does so when employees receive "actual notice" of the order. FED. R. CIV. P. 65(d)(2). Courts regularly require defendants to provide such notice to make injunctions effective. *See, e.g.*, Order Granting Pls.' Mot. Prelim. Inj. & Stay of Agency Action, *City of Chicago v. DOJ*, 1:25-cv-13863 (N.D. Ill. Feb. 3, 2026) (No. 31) ("*City of Chicago* Order"). The government's proposal—that it provide notice only to "leadership" that the government decides are "appropriate" recipients—would make the Court's order ineffective against all but a few employees, and even then only those the government chooses.

Fifth, the government's proposal contains no requirement whatsoever that the government inform Apple or Meta of this Court's order, even though such notice to the coerced intermediary is exactly what the Seventh Circuit required in *Backpage.com*, 807 F.3d at 239. The government's

4

only argument here is that it needs more than two days to determine who at Apple or Meta were contacted by the government's *own personnel*. Regardless, the government has had well over two months since Plaintiffs filed this case, and 17 days since the Court granted the preliminary injunction motion. A claim that the government does not know what its own personnel did is no reason to forgo the important step of providing notice to the intermediaries.

Finally, the government's proposal contains no requirement that it provide Plaintiffs and this Court with proof of compliance—what notice they gave, when, and to whom—to verify it complies with the Court's directives. *See City of Chicago* Order. Particularly given the government's resistance to providing notice (other than to an unidentified subset of employees it deems "appropriate"), a compliance mechanism is crucial.

***Proposed Next Steps.*** Defendants have, in piecemeal fashion, sought to effectively stay all district court proceedings because they lost at the preliminary injunction stage. Defendants have not even addressed, let alone satisfied, the requirements for a stay. *Nken v. Holder*, 556 U.S. 418, 434 (2009) (requiring, among other things, a likelihood of success on the merits and irreparable injury absent a stay). Defendants have not offered *any* reason why their loss on a preliminary injunction should bring discovery and other deadlines to a standstill. Plaintiffs urge that the Court should promptly enter the preliminary injunction order Plaintiffs have proposed (attached here as Exhibit A) and set deadlines for the parties' Rule 26(f) conference and for Defendants' response to the Complaint, respectively, 7 days and 14 days after the Court's order.

## Defendants' Statement

Defendants' proposed order bars the defendants from threatening Meta Platforms, Inc. or Apple, Inc., with some form of punishment should the platforms refuse to suppress plaintiffs' speech at the government's request. As written, the defendants' proposed order adequately

5

describes the enjoined conduct in reasonable detail, as required by Rule 65. Fed. R. Civ. P. 65(d)(1) (every order granting an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required."). The order identifies threatened punishments that constitute unlawful coercion—threats of adverse legal, regulatory, or economic government sanctions, specifying conduct prohibited by the First Amendment. *See Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 191 (2024) ("To state a claim that the government violated the First Amendment through coercion of a third party, a plaintiff must plausibly allege conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech.")

Critically, the defendants' proposed order also specifies the conduct that is *not* prohibited under the First Amendment. The proposed order outlines that the government is not barred "from providing Meta Platforms, Inc. or Apple, Inc., with information that the companies are free to use as they wish or from publicly criticizing Meta Platforms Inc. or Apple Inc.'s private speech." This language reflects the distinction between permissible persuasion and impermissible coercion, as the Supreme Court articulated in *NRA v. Vullo*:

> A government official can share her views freely and criticize particular beliefs, and she can do so forcefully in the hopes of persuading others to follow her lead. In doing so, she can rely on the merits and force of her ideas, the strength of her convictions, and her ability to inspire others. What she cannot do, however, is use the power of the State to punish or suppress disfavored expression.

*Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175 at 188 (2024); *see also id.* (discussing "the distinction between permissible attempts to persuade and impermissible attempts to coerce"); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963) (same). The Supreme Court has made clear that the government does not violate the First Amendment by attempting to persuade a platform to moderate content pursuant to the platform's own policies and preferences. *Murthy v. Missouri*,

6

603 U.S. 43, 61 (2024) ("[E]ven where the plaintiff, platform, time, content, and defendant line up, the links must be evaluated in light of the platform's independent incentives to moderate content."). Only actions by the government that could be "reasonably understood to convey a threat of adverse government action" cross the line into impermissible coercion. *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 177 (2024).

By contrast, Plaintiffs' proposed order ignores the distinction between persuasion and coercion, and, if adopted, could be interpreted to prohibit conduct permitted by the Constitution. Plaintiffs ask the court to enter an order enjoining the defendants from taking any action "to coerce, threaten, *pressure*, or *induce*" Apple, Inc. and Meta Platforms, Inc. to remove content. Plaintiffs' proposed order does not define these terms or elaborate further to identify what conduct is enjoined. If the court adopted Plaintiffs' proposed order—without defining "coerce, threaten, pressure, or induce" to make clear that the prohibited conduct is limited to conduct that would violate the First Amendment as construed in *Vullo*—its injunction could easily be understood to prohibit the government not just from engaging in that sort of violative conduct but also from engaging in the sorts of attempts to persuade platforms that *Vullo* makes clear are constitutionally legitimate. That would make the injunction overbroad, and also would cause it to lack the specificity required by Rule 65.

Plaintiffs' proposed order also fails to provide the defendants with sufficient time to comply, as it requires the defendants to identify all appropriate third parties at Meta and Apple and transmit the court's order within 48 hours. While the government is continuing to gather factual information, it cannot identify, in 2 days, each person at Meta Platforms, Inc. and Apple, Inc. that

the former Attorney General, the former Secretary of Homeland Security, and their officers allegedly communicated with about "removing ICE-monitoring apps."[3]

The parties discussed these issues during their April 30 meet and confer but were unable to reach an agreement on a proposed order. For the forgoing reasons, the defendants request that the court enter their proposed order, attached hereto.

Finally, on May 1, 2026, the court granted the defendants' motion to stay and directed the parties to propose dates for the parties' Rule 26(f) conference and Rule 16(b) conference in this joint status report. Dkt. 38. The defendants request that the court schedule the Rule 26(f) conference for June 5, 2026, and the Rule 16(b) conference for June 19, 2026, which is consistent with the relief the defendants sought in their motion to stay. *See* Dkt. 37.

| | |
|---|---|
| Dated: May 4, 2026 | Respectfully Submitted, |
| | |
| /s/ *Colin P. McDonell* | ANDREW S. BOUTROS |
| Colin P. McDonell | United States Attorney |
| James C. Grant (admitted pro hac vice) | |
| Hannah M. Abbott (admitted pro hac vice) | By: *s/ Thomas Cull* |
| Cary Davis (admitted pro hac vice) | Thomas M. Cull |
| FOUNDATION FOR INDIVIDUAL | Assistant United States Attorney |
| RIGHTS AND EXPRESSION | 219 South Dearborn Street |
| 510 Walnut St., Ste. 900 | Chicago, Illinois 60604 |
| Philadelphia, PA 19106 | (312) 886-4190 |
| (215) 717-3473 | thomas.cull@usdoj.gov |

---

[3] To the extent plaintiffs argue that the notice period is reasonable because the court ordered similarly in *Backpage* and *City of Chicago*, Dkt. 35 at 2, neither case supports plaintiffs' position. In *City of Chicago v. Dep't of Justice*, this court directed the defendants to notify *their own* employees, agents, and officers of the order within three days of the court's order. *City of Chicago v. Department of Justice*, 1:25-cv-13863, Dkt. No. 31 (N.D. Ill. Feb. 3, 2026) ("Defendants' counsel shall provide written notice of this Order to all Defendants [and their officers, agents, and servants] by the end of the third day after issuance of this Order."). Plaintiffs' reliance on *Backpage* fares no better. There, the court's order required the defendants to provide notice of the injunction to the recipients of his June 29, 2015 letter. That letter, which was attached to plaintiffs' complaint as an exhibit, identified by name the five individuals who received the coercive correspondence.

colin.mcdonell@fire.org
jim.grant@fire.org                                  *Counsel for Defendants*
hannah.abbott@fire.org
cary.davis@fire.org

*Counsel for Plaintiffs*