# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

KASSANDRA ROSADO and
KREISAU GROUP LLC,

        *Plaintiffs*,

    v.

TODD BLANCHE, in his official capacity as
Acting Attorney General, and

MARKWAYNE MULLIN, in his official capacity
as Secretary of Homeland Security,

        *Defendants*.

Civil Action No.: 1:26-cv-01532

Hon. Jorge L. Alonso

## PLAINTIFFS' BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................... ii

INTRODUCTION ...............................................................................................................1

    A.      Plaintiff Kassandra Rosado creates a Facebook group to help her community stay apprised of ICE operations in Chicago.............................................................2

    B.      Plaintiff Kreisau Group creates the "Eyes Up" app to store videos of ICE enforcement activity. ................................................................................................3

    C.      Federal officials make a series of threats of criminal prosecution concerning online tools that share information about ICE enforcement............................................4

    D.      Defendants coerce Apple to take down Eyes Up and similar apps. ...................................5

    E.      Defendants coerce Facebook to disable the ICE Sightings – Chicagoland group...............6

ARGUMENT.....................................................................................................................7

I.      Plaintiffs have standing. .........................................................................................7

II.     Plaintiffs have adequately alleged DOJ and DHS violated the First Amendment. .............8

    A.      The government's recycled merits arguments fail as before..................................8

    B.      DHS officials violated the First Amendment. .........................................................9

    C.      DOJ officials violated the First Amendment..........................................................11

III.   CONCLUSION ...................................................................................................12

i

**TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ...........................................................................................................8, 12

*Avitia v. Metro. Club of Chicago, Inc.*,
 49 F.3d 1219 (7th Cir. 1995) .....................................................................................................7

*Beal v. Beller*,
 847 F.3d 897 (7th Cir. 2017) .....................................................................................................8

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ...........................................................................................................8, 12

*CAIR-Found., Inc. v. Desantis*,
 822 F. Supp. 3d 1263 (N.D. Fla. 2026) ...................................................................................10

*Castañon Nava v. Dep't of Homeland Sec.*,
 806 F. Supp. 3d 823 (N.D. Ill. 2025)........................................................................................3

*Hampton v. Hanrahan*,
 600 F.2d 600 (7th Cir. 1979) ...................................................................................................11

*Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*,
 146 S. Ct. 1391 (2026)..............................................................................................................12

*Jacobs v. City of Chicago*,
 215 F.3d 758 (7th Cir. 2000) ...................................................................................................11

*Kentucky v. Graham*,
 473 U.S. 159 (1985) ...................................................................................................................9

*Murthy v. Missouri*,
 603 U.S. 43 (2024) .................................................................................................................1, 7

*Nat'l Rifle Ass'n of Am. v. Vullo*,
 602 U.S. 175 (2024) .........................................................................................................passim

*Peterson v. Wexford Health Sources, Inc.*,
 986 F.3d 746 (7th Cir. 2021) .................................................................................................1, 8

*Roldan v. Stroud*,
 52 F.4th 335 (7th Cir. 2022)......................................................................................................8

**Rules**

Fed. R. Civ. P. 12.................................................................................................1, 2, 8, 11

Fed. R. Civ. P. 65(d)(2)(C)...........................................................................................................11

**Other Authorities**

Kade Heather,
  *Justice Department Can No Longer Pressure Facebook, Apple to Remove ICE-sighting Apps,*
  *Judge Rules*, Chicago Sun-Times (May 12, 2026, at 13:22 ET).................................................7

**INTRODUCTION**

This Court, in granting Plaintiffs' motion for a preliminary injunction, concluded that Plaintiffs are likely to succeed on the merits of their claims that DOJ and DHS officials "violated their First Amendment rights through coercion of Facebook and Apple." Order Granting Preliminary Inj. ("PI Order"), Dkt. No. 34, at 7. The Court found that federal officials had "demanded, rather than requested, that Facebook and Apple censor Plaintiff's speech" and had "intimated that Facebook and Apple may be subject to prosecution for failing to comply" with these demands. *Id.* at 6–7. The government had contested both standing and the merits, and this Court fully considered the government's arguments and rejected them. The government now seeks to relitigate these issues by repackaging its failed arguments into a motion to dismiss.

These arguments fail now for the same reasons they failed before. On standing, this Court already concluded that Plaintiffs adequately alleged facts establishing standing, notwithstanding the governments' assertion (made then and repeated now) that *Murthy v. Missouri*, 603 U.S. 43 (2024), counseled otherwise. On the merits, the government again argues that Plaintiffs haven't established coercion under *National Rifle Ass'n of America v. Vullo*, 602 U.S. 175 (2024). Not only did the government fail to persuade before, but now it makes these arguments under a more plaintiff-deferential standard. On the preliminary injunction, Plaintiffs bore the burden to prove likely success of their claims based on evidence. Now on this motion to dismiss, Plaintiffs' allegations are taken as true and only need to plausibly state a claim. *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021). The government offers no convincing reason why, having previously failed to persuade based on a standard more favorable to defendants, it should succeed under Rule 12's plaintiff-deferential standard. This Court should reject the government's arguments on standing and the merits, again, and deny its motion to dismiss.

1

**STATEMENT OF FACTS**[1]

**A.      Plaintiff Kassandra Rosado creates a Facebook group to help her community stay apprised of ICE operations in Chicago.**

Plaintiff Kassandra Rosado was born and raised in Chicago. She founded and runs a small business in the Chicago Southland selling jewelry. She is active in her community—for example, working with other business owners to organize community events where they set up booths to sell their wares. Verified Complaint ("Compl.") ¶¶ 10, 24.

After President Trump's inauguration in January 2025, and his administration's launch of expanded ICE raids in Chicago and other U.S. cities, Rosado saw that people in her community were anxious about these developments. Rosado—a U.S. citizen of Mexican descent—observed these fears were most pronounced among Chicagoans of Hispanic heritage. She talked with other business owners about how attendance at public events had dropped sharply as fewer people ventured out. *Id.* ¶ 25.

Rosado took action and created a Facebook group: "ICE Sightings – Chicagoland." The group started small, consisting mostly of fellow business owners, some friends, and family. She wanted to help people share information about where ICE was operating in Chicago and how it was affecting the community. Members would post locations where they had seen or heard about ICE activities in public, sometimes including photos or videos. *Id.* ¶ 26.

The group remained small until September 2025, when ICE announced and launched an enforcement campaign in Chicago dubbed "Operation Midway Blitz." As reports of ICE officers shooting Chicagoans inflamed the city, interest also surged in Rosado's Facebook group. These violent encounters, along with reports of ICE officers detaining even citizens and lawful U.S.

---

[1] This statement of facts is identical to that in Plaintiffs' motion for preliminary injunction, *see* Dkt. No. 10-1, at 2–7, except the citations are exclusively to allegations in the complaint and omits citation to evidentiary exhibits, given the current Rule 12 posture.

residents,[2] gave Chicagoans reason to fear being injured or arrested just for being in the vicinity of ICE raids no matter their immigration status. *Id.* ¶ 27.

By October, membership in the Chicagoland Facebook group ballooned to nearly 100,000 members, with users publishing thousands of posts and comments per day. Members continued posting information about where ICE was operating, so they could stay safe by avoiding those areas, and photographs and videos of enforcement activity. Group members at times also voiced their opinions on ICE's tactics. *Id.* ¶¶ 28–29.

Rosado and volunteer moderators she recruited instructed members not to post anything threatening, hateful, or that promoted violence or illegal conduct. *Id.* ¶ 31. Out of thousands of posts and tens of thousands of comments members of the group created through October 2025, Facebook's own moderators removed only five as purportedly violating its guidelines. *Id.* ¶ 32. But Facebook advised Rosado these were "participant violations" that "don't hurt your group," explaining: "Groups aren't penalized when members or visitors break the rules without admin approval." *Id.* ¶ 33.

### B.       Plaintiff Kreisau Group creates the "Eyes Up" app to store videos of ICE enforcement activity.

Mark Hodges founded Kreisau Group LLC, a "technology-driven group focused on exposing injustice, defending human rights, and building resilient tools for people living under increasingly authoritarian systems." Part of that mission is to document and preserve evidence of governmental abuse of power. Hodges saw people posting videos online documenting ICE officers committing potential civil rights violations, and he wanted to ensure such videos remained available in the future for efforts to hold the government accountable. *Id.* ¶¶ 34–35.

---

[2] *See, e.g.*, *Castañon Nava v. Dep't of Homeland Sec.*, 806 F. Supp. 3d 823, 851–52, 852 n.13 (N.D. Ill. 2025).

So he created Eyes Up, an online tool allowing users to record, securely store, and view these videos. Eyes Up arranges videos in a map interface based on geolocation data. But because Kreisau Group moderators manually review each video before it becomes publicly available, Eyes Up cannot be used to track any ICE officer's location or movement in real time. *Id.* ¶¶ 35–38.

Apple approved Eyes Up for inclusion on its App Store on August 27, 2025. *Id.* ¶ 39. Users have submitted hundreds of videos made publicly accessible and securely stored for future use. *Id.* ¶¶ 39–41.

### C. Federal officials make a series of threats of criminal prosecution concerning online tools that share information about ICE enforcement.

In the summer of 2025, Department of Justice (DOJ) and Department of Homeland Security (DHS) officials began targeting online tools that shared information about where ICE was operating, casting aspersions of criminality and threats of prosecution toward anyone remotely associated with such speech. On June 30, CNN interviewed the creator of ICEBlock, an iPhone app allowing users to share locations of ICE operations so they can avoid interacting with ICE. *Id.* ¶ 43. In response, ICE Acting Director Todd Lyons alleged the app was "inviting violence" against officers and accused CNN of "willfully endangering the lives of officers." *Id.* ¶ 45. Border czar Tom Homan, when asked about CNN's reporting on the ICEBlock app, said "DOJ needs to look at this" and "send a strong message." *Id.* ¶ 46.

DHS Secretary Noem, when asked to respond to Homan's call for prosecuting CNN, said: "We're working with the Department of Justice to see if we can prosecute them for that … and we're going to actually go after them and prosecute them with the partnership of Pam [Bondi] if we can because what they're doing, we believe, is illegal." *Id.* ¶ 47. When Attorney General Bondi was asked in a news interview whether creating an app warning of ICE officers in the area made you "guilty of obstruction" and "aiding and abetting," Bondi answered, "Yeah, and that's what

4

he's doing," saying that DOJ was "looking at" the developer of ICEBlock and "he better watch out" because, she claimed, "that's not a [sic] protected speech." *Id.* ¶ 49.

**D.      Defendants coerce Apple to take down Eyes Up and similar apps.**

On October 2 and 3, Apple removed several apps that shared information about locations of ICE operations, including the ICEBlock app, a similar app called Red Dot, and Eyes Up. Apple said it did so "[b]ased on information we've received from law enforcement." *Id.* ¶¶ 51–52.

While Apple's public statement seemed carefully worded, Attorney General Bondi was blunt in saying Apple removed the apps because DOJ demanded it. In a statement to Fox News on October 2, Bondi boasted: "We reached out to Apple today demanding they remove the ICEBlock app from their App Store — and Apple did so." *Id.* ¶ 53. In subsequent remarks, Bondi confirmed that DOJ made platforms remove ICE-related apps: "We had Apple and Google take down the ICEBlock apps," warning, "We're not going to stop at just arresting the violent criminals we can see in the streets." *Id.* ¶ 54. Separately, conservative activist Laura Loomer reported that DOJ had demanded removal of the Red Dot app: "DOJ ordered Apple to delete the App from the App Store." *Id.* ¶ 55.

On October 3, 2025, Apple notified Kreisau Group that it removed the Eyes Up app, using the same careful phrasing it had used with others, *i.e.*, the takedown was based on "[i]nformation provided to Apple by law enforcement." *Id.* ¶¶ 51–52, 56. In this communication, Apple now said the app violated guideline 1.1.1, which prohibits "Defamatory, discriminatory, or mean-spirited content, including references or commentary about religion, race, sexual orientation, gender, national/ethnic origin, or other targeted groups." *Id.* ¶ 56. But Apple had reviewed and approved Kreisau Group's application for inclusion in the App Store just a month earlier. *Id.* ¶ 58. Eyes Up was then already accessible via a website, so Apple had full knowledge of its content—and it raised no questions about guideline 1.1.1. *Id.* ¶¶ 57–58. It is unclear how publicly sharing information

5

about public ICE activities could constitute "[d]efamatory, discriminatory or mean-spirited content," and Apple said nothing of this sort until after it was contacted by government officials. *Id.*

### E. Defendants coerce Facebook to disable the ICE Sightings – Chicagoland group.

Defendants soon turned to coercing Facebook to disable Rosado's "ICE Sightings – Chicagoland" group. *Id.* ¶ 62. On October 12, Laura Loomer tagged Noem and Bondi in a social media post flagging the Chicagoland Facebook group, alleging it was among the ICE tracking apps and pages that "are getting people killed." *Id.* ¶ 64. The next day, Loomer posted that her DOJ source had told her that DOJ "contacted Facebook and their executives at META to tell them they need to remove these ICE tracking pages from the platform." *Id.* ¶ 65.

Facebook disabled Rosado's Chicagoland group that day, with no prior notice to Rosado. *Id.* ¶ 66. Again, Attorney General Bondi claimed credit in a social media post, writing, "following outreach from [DOJ], Facebook removed a large group," which she baselessly claimed "was being used to dox and target [ICE] agents in Chicago." *Id.* ¶ 67. She went on to vow that DOJ "will continue engaging tech companies to eliminate platforms where radicals can incite imminent violence against federal law enforcement." *Id.* In another social media post that day, Secretary Noem affirmed that Facebook had removed the group "thanks to" DOJ, again warning that those who share information about ICE activities would be "prosecute[d] … to the fullest extent of the law." *Id.* ¶ 68.

The rationale Facebook gave Rosado for disabling her group was that it "went against the Community Standards." *Id.* ¶ 69. But Facebook's policies don't provide for disabling groups if some members post content flagged by Facebook's moderators; they call for removing groups only

6

when the group moderator repeatedly creates or affirmatively "approves" prohibited content, *id.* ¶ 70, and Facebook offered this rationale only after receiving DOJ's demands.

## ARGUMENT

### I.      Plaintiffs have standing.

This Court already concluded that Plaintiffs "have standing to bring this lawsuit" based on the facts alleged in the complaint. PI Order, Dkt. No. 34, at 3. There is "a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit." *Avitia v. Metro. Club of Chicago, Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995). And the government offers nothing to overcome this presumption, but simply recycles the same arguments misinterpreting *Murthy v. Missouri* it made in unsuccessfully opposing a preliminary injunction. *Compare* Defts' Opp'n to Preliminary Inj. ("PI Opp'n"), Dkt. No. 30, at 5–6, 9–13, *with* Mot. Dismiss, Dkt. No. 48-1, at 5–7. These arguments, which Plaintiffs previously rebutted at length, *see* Pls.' Reply in Supp. of Preliminary Inj. ("PI Reply"), Dkt. No. 31, at 2–12, failed to persuade this Court the first time around, *see* PI Order, Dkt. No. 34, at 3–5.[3] This Court can summarily reject the government's attempt at a second bite at the apple and hold, as before, that Plaintiffs have standing.

---

[3] As before, for example, the government argues there is no ongoing coercion justifying prospective injunctive relief. Mot. Dismiss, Dkt. No. 48-1, at 6–7. But Plaintiffs have alleged ongoing coercion and ongoing harm, *see* Compl. ¶¶ 77–81, and the government cites nothing requiring plaintiffs to repeatedly amend their complaint to include allegations of statements and conduct post-dating the filing of the lawsuit. Moreover, as Plaintiffs previously pointed out, after the filing of the lawsuit DOJ and DHS officials did continue to publicly double down on their position that speech discussing public ICE enforcement activity is unlawful and risks criminal consequences. *See* PI Reply, Dkt. No. 31, at 10 & n.5 (quoting statement DHS spokesperson made in February 2026). And government officials have continued doing so still, publicly proclaiming just last month that "these apps are a method to interfere with law enforcement activities and harbor illegal aliens." Kade Heather, *Justice Department Can No Longer Pressure Facebook, Apple to Remove ICE-sighting Apps, Judge Rules*, Chicago Sun-Times (May 12, 2026, at 13:22 ET), https://chicago.suntimes.com/immigration/2026/05/11/justice-department-facebook-apple-ice-sighting.

**II.     Plaintiffs have adequately alleged DOJ and DHS violated the First Amendment.**

**A.     The government's recycled merits arguments fail as before.**

The same allegations that supported Plaintiffs' successful motion for a preliminary injunction are more than enough to defeat the government's motion to dismiss. As before, Plaintiffs' claims require "conduct that, viewed in context, could be reasonably understood to convey a threat of adverse government action in order to punish or suppress the plaintiff's speech." *Vullo*, 602 U.S. at 191. This Court already concluded that Plaintiffs are likely to succeed on their claims under that standard. PI Order, Dkt. No. 34, at 7. It is illogical to now argue those claims were not even plausibly pled.

At the preliminary injunction stage, Plaintiffs proved their claims in large part with the allegations in their verified complaint, which is "the equivalent of an affidavit" for evidentiary purposes. *Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017). Those same allegations state a claim that withstands a motion to dismiss. Indeed, Plaintiffs succeed even more easily under the Rule 12 standard, because now this Court decides only whether the plaintiffs' claims are "plausible" after accepting their allegations as true and drawing all reasonable inferences in the plaintiffs' favor. *Peterson*, 986 F.3d at 751 (citing, e.g., *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *see also Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (holding that to survive a motion to dismiss, plaintiffs need only include enough facts to present a "story that holds together" (citation omitted)).

Even if the government weren't climbing a steeper hill this time around, its motion would still fail because it largely recycles unsuccessful arguments from its opposition to the preliminary injunction. For example, the government continues to argue that *Vullo* requires examination of the contents of communications between the government and the third party. *Compare* Mot. Dismiss, Dkt. No. 48-1, at 7–8, 9–10, *with* PI Opp'n, Dkt. No. 30, at 14, 18. As Plaintiffs previously

explained, *Vullo* says no such thing and rejected a mandatory-list-of-factors approach. PI Reply, Dkt. No. 31, at 12–13 (citing *Vullo*, 602 U.S. at 189–91; *id.* at 199 (Gorsuch, J., concurring)). Similarly, the government continues to parse individual acts and statements of government officials and analyze whether each was coercive in isolation. *Compare* Mot. Dismiss, Dkt. No. 48-1, at 8–9, 12, *with* PI Opp'n, Dkt. No. 30, at 14–18. But as Plaintiffs explained before, the inquiry is whether government conduct, viewed in context, is coercive "as a whole." PI Reply, Dkt. No. 31, at 13–14 (citing *Vullo*, 602 U.S. at 194–95; *id.* at 199 (Gorsuch, J., concurring)). Thus, while the government continues to urge the Court to ignore any statement that concerned another app (like ICEBlock), other targeted third parties (like CNN), or that more generally threatened ICE-related speech, this Court already correctly concluded that such statements were part of the course of conduct coercing Apple and Facebook to suppress Plaintiffs' speech. *See* PI Order, Dkt. No. 34, at 7. These worn arguments are no more persuasive now than they were a few months ago.

### B. DHS officials violated the First Amendment.

In seeking the dismissal of claims against the DHS Secretary, the government reuses these old arguments, and it doesn't fare any better with the smattering of new arguments it has devised since litigating and losing on the preliminary injunction motion. The thrust of the government's argument now is that only two statements, both made by Secretary Noem herself, are relevant to whether DHS violated the First Amendment by coercing Apple and Facebook. Mot. Dismiss, Dkt. No. 48-1, at 8. This argument rests on a stack of faulty premises.

First, this is an official-capacity lawsuit, so the real party in interest is DHS as an agency, not merely the named DHS Secretary (current or former) as an individual. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Therefore, not only are the coercive statements and conduct of Secretary Noem relevant, but so too are the statements and conduct of other DHS officials who participated in or contributed to the coercion. *See, e.g.*, Compl. ¶¶ 47, 68 (statements

of then-DHS Secretary Noem about prosecuting speech reporting on ICE activity); *id.* ¶ 45 (statement of Todd Lyons, Acting Director of ICE, equating reporting on ICE activity with violence); *id.* ¶ 46 (statement of Border Czar Tom Homan on prosecuting entities reporting in ICE-tracking apps); *see also* n.3 *supra* (statements of DHS spokespeople reiterating its position that speech reporting on public ICE activity is criminal).

Second, the government incorrectly assumes that, to make out coercive conduct aimed at suppressing speech, Plaintiffs must show Noem directly contacted Apple or Facebook. But as Plaintiffs have previously explained, the government can coerce even without specific communications directed at a specific third party, as courts have found unconstitutional coercion via executive order, press releases, and broadly distributed guidance letters. PI Reply, Dkt. No. 31, at 13 (citing *Vullo*, 602 U.S. at 183–85, 194–95; *CAIR-Found., Inc. v. Desantis*, 822 F. Supp. 3d 1263, 1274 (N.D. Fla. 2026)). Noem and other DHS officials repeatedly made clear in public statements (statements to the press, interviews, and social media posts) that individuals and entities even remotely affiliated with apps or other speech reporting on ICE enforcement activity risked criminal prosecution. Compl. ¶¶ 45–47, 68. As this Court already held, these threatening statements were coercive. PI Order, Dkt. No. 34, at 7 (finding that Noem "intimated that Facebook and Apple may be subject to prosecution" for failing to comply with government demands). The government cannot excise DHS from the coercion of Apple and Facebook it has publicly contributed to, acknowledged, and touted.

Third, DOJ reached out directly to Apple and Facebook with demands, and the facts alleged show that DHS officials were working in active concert with DOJ to suppress disfavored ICE-related apps and groups. *See* Compl. ¶¶ 46–47 (Noem announcing "We're working with the Department of Justice to see if we can prosecute" CNN for reporting on an ICE-tracking app); *id.*

¶ 47 (Noem reiterating that DHS was doing so "with the partnership of Pam [Bondi]"); *id.* ¶ 68 (Noem boasting that Facebook removed the Chicagoland group "thanks to" DOJ and further warning that "[w]e will prosecute"). Officials involved in "joint activity" violating constitutional rights are as liable as principal wrongdoers, *Hampton v. Hanrahan*, 600 F.2d 600, 627 (7th Cir. 1979), *rev'd in part on other grounds*, 446 U.S. 754 (1980), and may be properly enjoined from committing further harm, *see* Fed. R. Civ. P. 65(d)(2)(C) (extending injunctive relief to those "working in active concert" with enjoined defendants).

In short, the threats made by DHS officials themselves, along with DHS's active partnership with DOJ in suppressing the Chicagoland Facebook group and ICE-tracking apps, amply state a claim that DHS officials violated the First Amendment.

### C. DOJ officials violated the First Amendment.

In arguing for dismissal of the claims against DOJ officials, the government rests on the speculative notion that "a deadly shooting at an ICE facility in Dallas" played a role in the suppression of Plaintiffs' speech. Mot. Dismiss, Dkt. No. 48-1, at 10. As Plaintiffs previously noted the last time the government invoked this shooting, it lacks any logical or evidentiary connection to the suppression of Plaintiffs' speech. *See* PI Reply, Dkt. No. 31, at 7 n.3. But this Court should reject this argument for more fundamental reasons.

To start, when addressing a motion to dismiss a complaint for failure to state a claim, the court is generally confined to the allegations of the complaint. *See Jacobs v. City of Chicago*, 215 F.3d 758, 766 (7th Cir. 2000) (holding that district court erroneously considered matters outside of the complaint in ruling on motion to dismiss). If a party submits matters outside of the pleadings, the court must either exclude such materials or convert the motion to one for summary judgment after giving all parties a reasonable opportunity to present evidence. *Id.*; Fed. R. Civ. P. 12(d). But

11

the Court has no such choice to make here, because the government does not even present evidence of the shooting or any purported connection to this case.

Moreover, even were such evidence properly before the Court, it would not help the government's case. The government asks the Court to speculate "that Attorney General Bondi simply requested that the platforms remove the content because it was putting law enforcement officers at risk." Mot. Dismiss, Dkt. No. 48-1, at 10. This supposition not only lacks support, it is contrary to the facts alleged in the complaint. *See* Compl. ¶¶ 53–55, 63, 67–68. As Bondi herself admitted, and as this Court already found, she "demanded, rather than requested" that Facebook and Apple censor Plaintiffs' speech. PI Order, Dkt. No. 34, at 6. And that is what matters. Regardless of what motivated the DOJ to demand that third parties suppress protected speech— whether because of safety concerns (as the government suggests) or out of a desire to squelch information that may cast the government's immigration enforcement activities in a negative light (*see, e.g.*, Compl. ¶¶ 29–30, 40, 92 & n.42)—such coercion violates the First Amendment.[4]

## III.    CONCLUSION

Plaintiffs respectfully request that the Court deny the government's motion to dismiss.

Dated: June 30, 2026                                        Respectfully Submitted,

                                                                    /s/ *Colin P. McDonell*

---

[4] The government repeatedly cites *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 146 S. Ct. 1391 (2026), but if anything, that case directly undercuts the government's argument. *Hikma* applied the "familiar pleading standards" of *Twombly* and *Iqbal* to a complaint alleging the defendant induced infringement of a drug patent. *Id.* at 1399. The elements of such a claim have nothing to do with the *Vullo* standard. Indeed, the Supreme Court explicitly rejected an effort to compare the two. *Id.* at 1400. The Court contrasted *Vullo*'s standard, which merely requires alleged conduct that can be "*reasonably understood* to convey a threat," from the requirements of an induced-infringement claim, which focuses on "whether a defendant actively encouraged infringement through its statements, not merely how others may understand those statements." *Id.* at 1400 & n.3. But more broadly, nothing in *Hikma* authorizes the dismissal of a complaint based on the sort of unsupported speculation the government engages in here.

Colin P. McDonell
James C. Grant (admitted pro hac vice)
Hannah M. Abbott (admitted pro hac vice)
Cary Davis (admitted pro hac vice)
FOUNDATION FOR INDIVIDUAL
   RIGHTS AND EXPRESSION
510 Walnut St., Ste. 900
Philadelphia, PA 19106
(215) 717-3473
colin.mcdonell@fire.org
jim.grant@fire.org
hannah.abbott@fire.org
cary.davis@fire.org

*Counsel for Plaintiffs*

13